UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

MORGANTOWN ENERGY ASSOCIATES,

       Plaintiff,

v.                                        Civil Action No. 2:12-cv-6327

PUBLIC SERVICE COMMISSION OF WEST VIRGINIA and
MICHAEL A. ALBERT, in his official capacity as
Chairman of the Public Service Commission, and
JON W. MCKINNEY, in his official capacity as
Commissioner of the Public Service Commission, and
RYAN B. PALMER, in his official capacity as
Commissioner of the Public Service Commission,

       Defendants.

MEMORANDUM OPINION AND ORDER

       Pending is the motion to intervene as party-defendants by Monongahela Power Company ("Mon Power") and The Potomac Edison Company ("Potomac Edison," and together with Mon Power, "the Companies"), filed on December 27, 2012.  The existing parties have communicated to the court's law clerk that they do not oppose the motion.  For the reasons set forth below, the court finds that the Companies meet the requirements for intervention as a matter of right and grants their motion.

## I. Background

This case arises from a dispute over ownership of renewable energy credits. MEA is a general partnership with a principal place of business in Morgantown, West Virginia. Compl. ¶ 7. It owns and operates a 60.8 mw co-generation facility in Morgantown (the "Morgantown facility") that utilizes circulated fluidized bed combustion technology to burn bituminous coal refuse as its primary energy source. Id. On March 1, 1989 MEA and Mon Power entered into a long-term electric energy purchase agreement ("EEPA"), whereby Mon Power has purchased the energy and capacity generated by MEA. Id. ¶ 19.

The defendant Public Service Commission of West Virginia (the "Commission") is an administrative agency of the State of West Virginia, having the "authority and duty to enforce and regulate the practices, services and rates of public utilities." W. Va. Code ¶ 24-1-1. At all times relevant to this action, defendant Michael A. Albert served as the Chairman of the Commission, and defendants Jon W. McKinney and Ryan B. Palmer served as Commissioners. Compl. ¶¶ 9-11

In 2009, the West Virginia legislature passed the Alternative and Renewable Energy Portfolio Act (the "W.V. Portfolio Act"), requiring the Commission to create a system of tradable renewable energy credits ("W.V. Credits"). W. Va. Code

2

§ 24-2F-1-12.  The W.V. Portfolio Act awards credits to electric utilities that generate or purchase electricity from specified alternative and renewable energy resource facilities.  Id. § 24-2F-4(b).  It requires electrical utilities to "own an amount of credits equal to a certain percentage of electricity . . . sold by the electric utility in the preceding year to retail customers in West Virginia."  Id. § 24-2F-5(a).

Four years earlier, in 2005, Pennsylvania enacted the Alternative Energy Portfolio Standards Act (the "Pa. Portfolio Act"), 73 P.S. §§ 1648.1-1648.8.  Like the W.V. Portfolio Act, the Pa. Portfolio Act requires electric utilities to create or purchase alternative energy credits ("Pa. credits").  Compl. ¶ 29.  The Pa. Portfolio Act provides that "[u]nless a contractual provision explicitly assigns alternative energy credits in a different manner, the owner of the alternative energy system . . . owns any and all alternative energy credits associated with or created by the production of the electric energy by such facility."  73 P.S. § 1648.3(e)(12).

MEA's Morgantown facility qualifies as an alternate energy source under the Pa. Portfolio Act, and it began generating Pa. credits in 2006.  Compl. ¶ 28.  MEA has banked the Pa. credits with a FERC-regulated, interstate regional transmission organization responsible for tracking credits in both West

Virginia and Pennsylvania.  Id. ¶ 25.  MES has also engaged in transactions in which it has sold the Pa. credits to electric utilities.  Id. ¶¶ 32-33.

The Morgantown facility likewise meets the definition of an alternate energy resource under the W.V. Portfolio Act.  Id. ¶ 41.  MEA, however, has not filed and currently has not made a determination to file an application to become certified under the W.V. Portfolio Act to generate W.V. Credits.  Id. ¶ 41.  It asserts that it has no legal obligation to pursue certification, and it points out that although a facility may be capable of generating credits recognized by two different states, the credits can be transferred only once to a utility.  Id. ¶¶ 27, 41.

The EEPA between Mon Power and MEA, predating both states' portfolio acts, is silent regarding ownership of any potential credits generated by the Morgantown facility.  Id. ¶ 42. On February 23, 2011, the Companies filed a petition for declaratory relief with the Commission, requesting a ruling that the Companies were entitled to W.V. credits attributable to the Morgantown facility and two other non-utility generating projects.[1]  Id. ¶ 44.  The Commission granted the petition on November 22, 2011.  Id. ¶ 48.

---

[1] One of these projects is the subject of concurrent litigation pending before this court as City of New Martinsville v. Public

MEA contends that the Commission's order fails to address that the same credits are already owned by MEA pursuant to the Pa. Portfolio Act.  Id. ¶ 49.  Additionally, MEA believes that the Commission's order violates the Public Utility Regulatory Policies Act of 1978 ("PURPA") in three respects: (1) by concluding that Mon Power's existing payment warranted giving Mon Power the credits, (2) by concluding that the Commission has the authority to deem MEA's facility certified under the W.V. Portfolio Act to generate W.V. credits, and (3) by discriminating against the MEA compared to other non-utility generators simply because MEA is a "qualifying facility" under PURPA.  Id. ¶ 55.

In December 2011, the MEA filed an appeal of the Commission order with the West Virginia Supreme Court of Appeals. Id. ¶ 53.  The Supreme Court of Appeals affirmed the Commission's ruling on June 11, 2012.

On February 24, 2012, MEA petitioned the Federal Energy Regulatory Commission ("FERC") to bring an enforcement action against the Commission to require compliance with PURPA.  Id. ¶ 54.  In an order issued April 24, 2012, FERC found that "certain statements in the [Public Service Commission of] West Virginia Order are inconsistent with PURPA."  FERC Order ¶ 45.  It further

---

Service Commission of West Virginia, No. 2:12-cv-1809.

5

stated that "PURPA does not address the ownership of [credits]"
and that the "avoided cost rates" set by the terms of PURPA are
not meant to compensate facilities for more than capacity and
energy.  Id. ¶¶ 46-47.  It concluded that "[t]o the extent that
the West Virginia Order finds that avoided-cost rates under PURPA
also compensate for [credits], the West Virginia Order is
inconsistent with PURPA."  Id. ¶ 47.

Despite these findings, FERC declined to exercise its
discretionary enforcement authority.  Id. ¶ 44.  Under PURPA, when
FERC declines to bring an enforcement action within 60 days of the
filing of a petition, the petitioner may bring its own enforcement
action against the state regulatory authority in the appropriate
U.S. district court.  16 U.S.C. § 824a-3(h)(2)(B).  Pursuant to
that provision, MEA filed the present action on October 8, 2012.

In the pending motion, the Companies argue that their
putative property interest in the Credits makes them proper and
necessary parties to this litigation and justifies intervention as
of right, pursuant to Federal Rule of Civil Procedure 24(a).  Mot.
Intervene 1-2.  Alternatively, the Companies contend that because
their ownership is the central dispute in this case, permissive
intervention is proper, pursuant to Rule 24(b).  Id. at 2-3.

## II. Governing Standard

Federal Rule of Civil Procedure 24(a) provides intervention of right, on a timely motion, to anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a). Tracking the language of the Rule, an application to intervene as of right must satisfy the following four requirements:

> (1) the application to intervene must be timely; (2) the applicant must have an interest in the subject matter of the underlying action; (3) the denial of the motion to intervene would impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the existing parties to the litigation.

Houston Gen. Ins. Co. v. Moore, 193 F.3d 838, 839 (4th Cir. 1999).

"[T]imeliness is a 'cardinal consideration' of whether to permit intervention."  Moore, 193 F.3d at 839 (quoting Brink v. DaLesio, 667 F.2d 420, 428 (4th Cir. 1981)).  Its determination depends upon "how far the suit has progressed, the prejudice which delay might cause other parties, and the reason for the tardiness in moving to intervene."  Gould v. Alleco, Inc., 883 F.2d 281, 286 (4th Cir. 1989).  In weighing these elements, "wide discretion [is] afforded the district courts."  Id.  Because a would-be

intervener as of right "'may be seriously harmed if he is not permitted to intervene, courts should be reluctant to dismiss a request for intervention as untimely, even though they might deny the request if the intervention were merely permissive." <u>Mtn. Top Condo. Ass'n v. Dave Stabbert Master Bldg., Inc.</u>, 72 F.3d 361 (3d Cir. 1995) (quoting Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d, § 1916, at 424 (1986)).

Rule 24(a) does not specify the nature of the interest necessary to satisfy the second requirement, but "the Supreme Court has recognized that '[w]hat is obviously meant . . . is a significantly protectable interest.'" <u>Teague v. Bakker</u>, 931 F.2d 259, 261 (4th Cir. 1991) (quoting <u>Donaldson v. United States</u>, 400 U.S. 517, 531 (1971)).  The Fourth Circuit has held that an interest contingent on the outcome of other litigation is a significantly protectable interest.  <u>Id.</u>

To establish the third requirement, impairment, "a party need not prove that he would be bound in a res judicata sense by any judgment in the case." <u>Spring Const. Co. v. Harris</u>, 614 F.2d 374, 377 (4th Cir. 1980).  It is sufficient that the "disposition of a case would, as a practical matter, impair the applicant's ability to protect his interest in the transaction." <u>Id.</u>

A movant satisfies the fourth requirement "if it is shown that representation of its interest 'may be' inadequate."

8

United Guar. Residential Ins. Co. of Iowa v. Philadelphia Sav.
Fund Soc'y, 819 F.2d 473, 475 (4th Cir. 1987) (citing Trbovich v.
United Mine Workers, 404 U.S. 528, 538 n.10 (1972)).  The movant's
burden in making this showing is "'minimal.'"  Id. (citing
Trbovich, 404 U.S. at 538 n.10).

    Guiding the court's analysis is the principle that
"liberal intervention is desirable to dispose of as much of a
controversy 'involving as many apparently concerned persons as is
compatible with efficiency and due process.'"  Feller v. Brock,
802 F.2d 722, 729 (4th Cir. 1986) (quoting Nuesse v. Camp, 385
F.2d 694, 700 (D.C. Cir. 1967)).


                        III. Discussion

    The court finds that the Companies satisfy the
requirements to intervene as a matter of right, pursuant to Rule
24(a).  First, the motion is timely.  The Companies moved to
intervene prior to the court's entry of a scheduling order.  They
represent that no discovery has occurred, Mem. Supp. Mot.
Intervene 6, and the absence of opposition indicates that
intervention will not unduly prejudice either of the existing
parties.

    Second, the Companies undoubtedly have an interest in
the renewable energy credits which comprise the subject matter of

the litigation.  The Companies have a tenable claim of ownership rights to the Morgantown facility credits, as indicated by the Commission's November 22, 2011 determination and the West Virginia Supreme Court of Appeals' June 11, 2012 affirmation.

Third, the outcome of this action would impair or impede the Companies' ability to protect its interests in the Credits. Should MEA prevail, the Commission determination would be voided and the Companies would lose their ownership rights to the credits.

Finally, the Commission may not adequately represent the Companies' interest in the litigation.  While the Commission's and Companies' interests are generally aligned, their interests diverge in important ways.  The court finds persuasive the Companies' argument that their approximately $50 to $100 million in property interests creates an incentive for litigation beyond that of the Commission.  Cf. Teague v. Bakker, 931 F.2d 259, 262 (4th Cir. 1991) (finding the 'adequate representation' prong satisfied where financial constraints created "a significant chance that [current parties] might be less vigorous than the . . . Intervenors in defending their claim").  Further, the Companies are likely correct that "[p]olitical realities, the public interest, the costs of litigation, and the desire to settle are not the same for the Companies . . . as they are for the

[Commission]." Mem. Supp. Mot. Intervene 11. The Companies have thus made the required minimal showing that representation may be inadequate.

The Companies having satisfied each of the requirements for intervention as of right, it is accordingly ORDERED that the motion to intervene be, and it hereby is, granted. Because the Companies are entitled to intervene as a matter of right, the court need not address their alternate argument regarding permissive intervention.

Based on the alignment of claims as currently constituted, the Companies join the case as party defendants. The Clerk is directed to file the Companies' proposed Answer in Intervention this same day. The Clerk is further directed to forward copies of this written opinion and order to all counsel of record and any unrepresented parties.

ENTER: January 10, 2013

John T. Copenhaver, Jr.
United States District Judge